IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

**DEC 1 5 2000**

Michael N. Milby, Clerk

| | | |
|---|---|---|
| GERARDO ORTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-103 |
| | § | |
| BJ SERVICES COMPANY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT BJ SERVICES COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 56(c), Defendant BJ Services Company ("BJ Services") files this Motion for Summary Judgment as to all of Plaintiff's claims, and respectfully states the following:

### I. INTRODUCTION

Plaintiff brings this suit[1] alleging BJ Services discriminated against him by terminating him in violation of the Texas Commission on Human Rights Act ("TCHRA") Section 21 of the Texas Labor Code based on his national origin, intentionally inflicted emotional distress upon him, and denied him severance pay under an employee benefit plan. BJ Services, however, establishes herein, by competent summary judgment evidence that: (1) Plaintiff was not discriminated against based on his national origin by BJ Services' attempt to demote or transfer him or his voluntary separation/termination from employment because he refused available

---

[1] Plaintiff originally brought suit in the 79th Judicial District Court in Jim Wells County. BJ Services removed the case to this court based on federal question jurisdiction because Plaintiff asserts, in part, that he was wrongfully denied severance pay under BJ Services' Reduction in Force Policy, which is an ERISA employee benefit plan.

17.

work; (2) BJ Services did not engage in any extreme and outrageous conduct; (3) Plaintiff refused to accept available positions and therefore was not entitled to severance pay under the plans; and, in the alternative, (4) Plaintiff's claim of national origin discrimination is barred by limitations. Accordingly, all of Plaintiff's claims are barred.

## II. BACKGROUND FACTS

Plaintiff was hired by the Western Company of North America on October 27, 1980, to work at its Alice, Texas facility. *See Plaintiff's deposition* at 18:11 – 19:14 attached as <u>Exhibit A</u>. The majority of the time between his start date and 1989, Plaintiff worked as an Equipment Operator in Cementing Operations. *See* <u>Exhibit A</u> at 20:2 – 22:2. In 1989, Plaintiff was promoted from his Senior Equipment Operator position to a Service Supervisor position. *See id.* Plaintiff remained in this position for approximately two years at which time there was a downturn in the oilfield service industry. *See id.* at 22:5 – 16. At that time (May 16, 1991), Plaintiff was demoted from his Service Supervisor position back to an Equipment Operator position. *See id.* This demotion also resulted in a reduction of pay. *See id.* at 22:14 - 16. When the oilfield service industry started to rebound, Plaintiff was promoted back to his Service Supervisor position. *See id.* at 24:22 – 25:6.

In 1995, BJ Services merged with the Western Company of North America. *See Affidavit of Stephen A. Wright* at ¶ 3, attached as <u>Exhibit B</u>; <u>Exhibit A</u> at 26:5–11. Plaintiff continued his employment with BJ Services as a Service Supervisor. <u>Exhibit A</u> at 26:15 – 27:1. Plaintiff received periodic pay raises. *See Personnel Action Form* attached as Exhibit 1 to <u>Exhibit B</u> at ¶ 4. In 1998, there was another downturn in the oilfield industry. *See* <u>Exhibit B</u> at ¶ 15; <u>Exhibit A</u> at 93:9-24. As a result, BJ Services began to reduce its workforce. *See* <u>Exhibit A</u> at 96:3-97:6; <u>Exhibit B</u> at ¶ 15; *Affidavit of John Patterson* at ¶ 3, attached as <u>Exhibit C</u>. The objective of BJ

2

Services was to keep its best personnel and layoff the other workers. *See* Exhibit B at ¶ 13.  The reason for this objective is twofold.  First, BJ Services attempts to limit its workforce by terminating its mediocre and less versatile workers while retaining its best and most versatile workers.  *See id.*  Second, when the industry rebounded, BJ Services would still employ its best workers and be able to promote these individuals into its leadership positions.  *See id.*; Exhibit C at ¶ 4.

Prior to the reorganization in mid to late December 1998, the relevant job hierarchy at the Alice District in descending order was: (1) District Manager; (2) District Operations Supervisor; (3) Field Supervisor; (4) Senior Service Supervisor; (5) Service Supervisor; and (6) Senior Equipment Operator.  *See Job Hierarchy*, attached as Exhibit 1 to  Exhibit C at ¶ 5.  In December 1998, there were three service supervisors (Albert Lopez, Luis Vela, and Plaintiff) in Cementing Operations at the Alice District and all were Hispanic.  *See id.* at ¶ 8; Exhibit A at 106:7- 107:6.

In December 1998, Rick Coleman was the Field Supervisor in Cementing Operations at the Alice District.  *See* Exhibit C at ¶ 6.  Due to the downturn, Mr. Coleman was demoted or bumped back from his Field Supervisor position to the Senior Service Supervisor position in Cementing Operations and was given a pay reduction.  *See id.* at ¶ 7.  BJ Services did not need three Service Supervisors in addition to the higher level Senior Service Supervisor Mr. Coleman, so Plaintiff was selected for demotion.  *See* Exhibit C at ¶¶ 7-9, 15.

On or about December 18, 1998, Bob McGuire, District Manager, and John Patterson, District Operations Manager, met with Plaintiff to discuss the reduction in force and the reclassifications.  *See Letter from Plaintiff dated January 29, 1999,* attached as Exhibit D; Exhibit A at 109:13 - 111:17.  Plaintiff was informed he was being reclassified and demoted from his Service Supervisor position to either an Senior Equipment Operator position or a

HOUSTON·015882/00010:586387v2

Cement/treater position.[2]  *See* <u>Exhibit A</u> at 113:25 – 114:21; <u>Exhibit C</u> at ¶ 9; <u>Exhibit D</u>. Specifically, Plaintiff testified:

> Q.  What else did you learn in that meeting, if anything?
> A.  They [Bob McGuire and John Patterson] said that I was being removed as a Service Supervisor, and they had a position as a Relief Service Supervisor in cement and stimulation and that I was going to be moved.
>      …
> Q   What was going to happen was -- you were going to be bumped back to an Equipment Operator position, right?
> A.  Correct.

*See* <u>Exhibit A</u> at 113:25 – 114:15.  On Monday, December 21, 1998, Plaintiff, however, refused to accept his reclassification to Senior Equipment Operator in the Alice District.  *See* <u>Exhibit A</u> at 123:3-20; <u>Exhibit D</u>; *Plaintiff's Employment Intake Questionnaire,* attached as <u>Exhibit E</u>.

Within the next few days, Mr. Patterson told Plaintiff to call John Samples, a supervisor at the Camargo District near McAllen, Texas, about available positions at the Camargo District. *See* <u>Exhibit A</u>, 135:24-25; 136:23 – 137:3; <u>Exhibit C</u> at ¶ 12.  Shortly thereafter, Plaintiff and Mr. Samples spoke about a position at the Camargo District, and Mr. Samples offered him a Service Supervisor position.  *See* <u>Exhibit A</u> at 138:22 – 139:11; 140:15-19; *Affidavit of John Samples*, attached as <u>Exhibit F</u>.  Despite another attempt by BJ Services to retain Plaintiff in a position with it, Plaintiff again refused to accept an available position at the Company's Camargo District.  *See* <u>Exhibit A</u>, 139:10 – 141:23.  In fact, Plaintiff admitted that he would not accept <u>any position</u> at the Camargo District because he refused to relocate.  *See id.*  Plaintiff's action was directly contrary to his earlier indication, in January 1998, that he would be willing to relocate in the future.  *See Employee Development/Evaluation* at p.2 attached as Exhibit 2 to <u>Exhibit C</u> at ¶ 11.  Ultimately, Plaintiff was terminated.  The basis for his termination was his

---

[2] Further references to the Senior Equipment Operator position will be inclusive of both the Cement/Treater and Senior Equipment Operator positions.

failure to accept any of the reclassifications that he was offered resulting in a failure to report to work. *See* Exhibit C at ¶ 13.

At the time of the downturn, BJ Services had an ongoing Reduction in Force Policy, which it or a version of it had been in effect since 1988, as well as a one-time Enhanced Severance Policy. *See Reduction in Force Policy* attached as Exhibit 2 to Exhibit B at ¶¶ 6-10, 21; *Enhanced Severance Policy* attached as Exhibit 7 to Exhibit B at ¶ 21. To qualify for either policy, an employee had to be terminated as a part of the reduction in force. *See id.* Neither policy allowed for voluntary terminations. *See id.* Thus, Plaintiff was not entitled to any severance pay under either policy due to his failure to accept available positions/work. *See id.* Importantly, Plaintiff admits that he knows no employee of BJ Services who was given a choice of a demotion or a severance package or a choice of demotion or layoff in December 1998. *See* Exhibit A at 186:22 – 187:6. Accordingly, Plaintiff was treated the same as all other employees.

Although Plaintiff was the only Service Supervisor to be demoted at the Alice District, BJ Services demoted a total of twenty-eight Service Supervisors across the nation during 1998 and twenty-three of the twenty-eight were Anglos. *See* Exhibit B at ¶ 19. Further, BJ Services demoted seven employees, not counting Plaintiff, at the Alice District in 1998 and 1999, and five of the seven were Anglos. *See id.* at ¶ 18.

### III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment against a party who fails, after adequate discovery and upon motion, to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986). In such an instance, there can be no genuine issue as to any material fact, since a

5

complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other material facts immaterial, and the movant is entitled to summary judgment as a matter of law. *See id.* Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). Likewise, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*). Only factual disputes that might affect the outcome of the suit under the governing substantive law will be considered as material for purposes of determining whether summary judgment is proper. *See Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994).

## IV. ARUGMENT AND AUTHORITIES

### A.    Plaintiff Cannot Establish a Prima Facie Case of National Origin Discrimination

Plaintiff alleges BJ Services violated the Texas Commission on Human Rights Act ("TCHRA") by discriminating against him on the basis of his national origin by denying him a layoff and severance pay. Texas courts have held that TCHRA is to be construed in a manner consistent with Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000 *et seq.*, and as such, federal cases interpreting Title VII are authoritative to Plaintiff's allegations. *See, e.g. NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

To establish a prima facie case for national origin discrimination in a reduction in force claim, a plaintiff must show that:

1. he is a member of a protected class;

2. he was qualified for the position;

3. he suffered an adverse employment action; and

4. similarly situated employees outside the protected class were treated differently.

*See Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 (5th Cir. 1997); *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991).

In this case, it is undisputed that Plaintiff is a member of a protected group, Hispanic, and that he was qualified for his position as Service Supervisor. However, Plaintiff is unable to show that he suffered an adverse employment action and that similar situated non-Hispanic employees were treated more favorably. Thus, Plaintiff's claim for national origin discrimination fails as a matter of law.

 *1. Plaintiff did not suffer an adverse employment action.*

"Title VII [and the TCHRA] was designed to address ultimate employment decisions, not to address every decision made by employers that might arguably have some tangential effect upon those ultimate decisions." *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997). In situations where the plaintiff does not allege severe and pervasive harassment, actionable adverse employment actions are generally limited to "tangible employment action[s] [that] constitute [ ] a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added).

Fifth Circuit precedent is in accord recognizing that transferring an employee does not necessarily constitute an adverse employment action. *See Watts v. Kroger Co.*, 170 F.3d 505, 511-12 (5th Cir. 1999); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993). In *Watts*, the Fifth Circuit held, "along with many of our sister circuit courts, that employment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Watts*,

170 F.3d at 512; *see also Place v. Abbott Labs,*215 F.3d 803, 810 (7th Cir. June 1, 2000) (finding that being moved from one job to another job does not necessarily constitute retaliation and that "[t]here was no guarantee that [plaintiff] would remain in the job she held before her transfer."); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (recognizing that reassignment to different division is not adverse); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (recognizing reassignment to different position without any reduction in title, salary, or benefits was not adverse employment action despite different duties and additional stress); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (recognizing transfer without reduction pay is not adverse employment action).   Moreover, a decision to reassign a person, even if it was unwise or unfair, does not establish that it was discriminatory or retaliatory. *See Place,* 215 F.3d at 810; *Nash,* 9 F.3d at 404.

In *Nash,* the Fifth Circuit reviewed whether a transfer constituted an adverse employment action in the context of a claim of retaliation for making a complaint covered by Title VII.   The court found the transfer of the complainant away from the hostile situation "reflected a prudent response to an unpleasant situation."   9 F.3d at 404.   The court further recognized that the "transfer represents not retaliation, but an act that insulated her from any further contact with [the harasser]."   *Id.*   In another case, the Fifth Circuit hypothesized that a transfer as a result of a reduction in force with identical pay is different than an involuntary transfer for no apparent reason. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999).

Here, Plaintiff admits that BJ Services was under going a reduction in force due to a downturn in the oilfield service industry. *See* Exhibit A at 93:15 – 24; Exhibit B at ¶ 15; Exhibit C at ¶ 3.   Initially, Plaintiff was offered a different position at the Alice District with a reduction in pay. *See* Exhibit A at 113:25 – 114:19.   Plaintiff, however, refused to accept this position due

8

to the pay reduction. *See Plaintiff's Supp. Answer to Interrogatories* at. No. 2, attached as Exhibit G; Exhibit A at 123:4-16. When Mr. John Patterson learned of Plaintiff's decision not to accept either position at the Alice District, he contacted other locations within the Company to ascertain if there were any other Service Supervisor positions available for Plaintiff. *See* Exhibit C at ¶ 11-12. Mr. Patterson's actions were prudent according to Plaintiff's most recent evaluation indicating he was willing to relocate. *See* Exhibit 2, attached to Exhibit C at ¶ 3. Within a few days, Mr. Patterson learned, via Mr. John Samples, of an open Service Supervisor position in the McAllen, Texas area. *See id.* In fact, Plaintiff admits that Mr. Patterson told him to contact Mr. Samples about a job. *See* Exhibit A at 137:17-19. When Plaintiff and Mr. Samples spoke, Plaintiff concedes that Mr. Samples told him that he had a job available for him in the McAllen, Texas area. *See* Exhibit A at 138:22 – 139:9; Exhibit F. Mr. Samples told Plaintiff that he had a Service Supervisor opening in the Camargo District. *See* Exhibit F. Although Plaintiff stated in his deposition that Mr. Samples did not tell him the position was a Service Supervisor position, Plaintiff stated *he would not have accepted any position in the McAllen area. See* Exhibit A at 139:13 – 24. Specifically, Plaintiff testified:

> Q: Did you ask [Mr. Samples] about the specifics [of the position]?
> A: No.
> Q: Why not?
> A: Because I was working in Alice, and that's where I wanted to stay, in Alice.
> Q: So you were not interested in moving to McAllen, were you?
> A: Correct.
> Q: You would not accept any position in McAllen, correct?
> A: Correct.
> Q: Even if it meant you could—no matter what the position was.
> A: Correct.
> Q: You were just not going to McAllen.
> A: Correct.

*Id.*

9

Despite the reduction in force, Plaintiff was given the opportunity to relocate to his same position, but he refused to do so. The basis of his refusal was that he was not willing to relocate to the McAllen area no matter what position was offered. Like the company's decision in *Nash*—to transfer the employee to an equivalent position to alleviate the alleged problem, BJ Services, in the face of a company-wide reduction in force, realized that Plaintiff was not satisfied with the reclassification to a lower seniority position with a pay reduction and attempted to alleviate his dissatisfaction by offering him the same position, benefits, and pay in the McAllen, Texas area. According to the Fifth Circuit precedent, BJ Services' offer to transfer Plaintiff, under such circumstances, does not constitute an adverse employment action. *See Watts*, 170 F.3d at 512; *Nash*, 9 F.3d at 404; *Harris*, 168 F.3d at 221.

2.     *Plaintiff Cannot Establish That Similarly Situated Non-Hispanic Employees Were Treated More Favorably.*

To establish that similarly situated non-Hispanic employees were treated differently, Plaintiff must establish two things. First, Plaintiff must establish that there were similarly situated employees. *See Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1090 (5th Cir. 1995). The Fifth Circuit has defined 'similarly situated' as embracing "nearly identical circumstances." *Id.* Second, Plaintiff must prove that the similarly situated employees were treated more favorably than himself. *See id.* Plaintiff cannot establish either.

a.     Plaintiff was not similarly situated to any non-Hispanic employees.

In *Neito v. L&H Packing Co.*, Neito alleged he was terminated on the basis of his national origin in violation of Title VII. 108 F.3d 621, 623 (5th Cir. 1997). Neito attempted to support his contention that a similarly situated Anglo employee was treated in a more lenient fashion. *See id.* The court examined whether the Anglo employee and Neito were similarly situated employees. *See id.* The court noted that, unlike Neito, the Anglo employee did not have

10

a prior disciplinary history nor had he disobeyed a direct order from a supervisor. *See id.* Thus, the Fifth Circuit held that Neito and the Anglo employee were not similarly situated and that Neito had failed to establish that similarly situated non-Hispanic employees were treated differently. *See id.*

Here, Plaintiff compares himself to two Anglo employees, Glen Simon and Richard Coleman. *See* Exhibit G at No.3, Exhibit A at 180:25 – 182:19. Mr. Coleman was a Field Supervisor in Cementing Operations, which ranks higher in the hierarchy of positions than Service Supervisor. *See* Exhibit A at 182:1- 11; *Hierarchy of Positions* attached as Exhibit 3 to Exhibit B at ¶ 16. Glen Simon was a Senior Service Supervisor in Stimulation Operations, which not only ranks above the Service Supervisor position, but is also on a different side of operations. *See* Exhibit A at 165:13 – 16; Exhibit C at ¶ 6. As a result, neither Mr. Simon nor Mr. Coleman, with whom Plaintiff attempts to compare himself, held the same position as Plaintiff, and Mr. Simon worked in a completely different side of operations.

Further, any attempt by Plaintiff to compare himself with the other Service Supervisors in Cementing Operations—the position held by Plaintiff, fails to help Plaintiff establish his claim. This is due to the fact that the other two Service Supervisors in Cementing Operations were Albert Lopez and Luis Vela, who are both Hispanic. *See* Exhibit A at 105:24 – 106:19. Thus, there were no Anglo employees in the Service Supervisor position in Cementing Operations in the Alice District at the time of Plaintiff's demotion/reclassification from this position.

Accordingly, the two non-Hispanic employees—Mr. Simon and Mr. Coleman, with which Plaintiff compares himself, are not similarly situated to Plaintiff because neither held a Service Supervisor position similar to Plaintiff's position. Moreover, the remaining two Service

11

Supervisors in Cementing Operations, Mr. Lopez and Mr. Vela, were Hispanic. Therefore, the evidence establishes there were no Anglo employees similarly situated to Plaintiff.

      b.      <u>Plaintiff cannot establish that any similarly situated non-Hispanic employees were treated more favorably</u>.

In *Mayberry v. Vought Aircraft*, an African American employee asserted a claim of race discrimination by asserting that white employees who engaged in similar acts were not punished. 55 F.3d at 1090. The court reviewed the evidence, which established that fourteen other employees had been disciplined for their work performance. *See id.* Of these fourteen, none were African-American, two were Hispanic, and twelve were white. *See id.* Therefore, the Fifth Circuit held that Mayberry failed to establish his prima facie case. *See id.*

      (i)     *Demotions*

The downturn in the oilfield industry was affecting not only the Alice District, but all BJ Services' districts. As a result, BJ Services demoted/reclassified twenty-eight Service Supervisors in 1998, and twenty-three of these individuals were Anglos. *See 1998 Demotions of Service Supervisors* attached as Exhibit 5 to <u>Exhibit B</u> at ¶ 19. In the Alice District alone, seven employees, not including Plaintiff, received demotions in 1998 and 1999. *See Alice District Demotions* attached as Exhibit 4 to <u>Exhibit B</u> at ¶ 18. Thus, demotions were not uncommon and had been used in various situations. Of these seven, five were Anglos and two were Hispanic. *See id.*

As previously stated, Plaintiff specifically alleges that Mr. Coleman was treated more favorably than him. Plaintiff admits his demotion from Service Supervisor to Senior Equipment Operator is similar to the demotion of Mr. Coleman from Field Supervisor to Senior Service Supervisor. *See* <u>Exhibit A</u> at 182:1 – 21. However, Plaintiff attempts to distinguish Mr. Coleman's demotion alleging that Mr. Coleman's demotion did not include a pay reduction. *See*

12

*id.*; Exhibit G at No. 3. Plaintiff concedes that he does not know whether Mr. Coleman received a reduction in pay, and in fact, Mr. Coleman did receive a reduction in pay. *See* Exhibit A at 163:24-164:3; Exhibit C at ¶ 7. Thus, even if this Court somehow finds that Mr. Coleman and Plaintiff are similarly situated, despite their different positions, Mr. Coleman was treated the same as Plaintiff.

(ii)    *Severance Pay*

In the Alice District, thirty individuals received severance pay under the ongoing Reduction in Force Policy or the one-time Enhanced Severance Package. *See Alice District Employees Receiving Severance Pay* attached as Exhibit 6 to Exhibit B at ¶ 21. Twenty-five of the thirty individuals receiving severance pay were Hispanic. *See id.* Four of the thirty individuals—Glen Simon, Otis Hinze, John Gildart, and David Alvarez—met the criteria of the one-time Enhanced Severance Policy and signed a corresponding release. *See id.* Of these four individuals, no one held a Service Supervisor position in Cementing Operations and David Alvarez is Hispanic. *See id.*; Exhibit C at ¶ 8. Finally, not one of the thirty individuals receiving severance pay was given an option of continued employment or severance benefits nor were they given the opportunity to volunteer for a severance package. *See* Exhibit B at ¶¶ 14, 21. Plaintiff indicated that he has no evidence to the contrary. *See* Exhibit A at 186:25 – 187:6.

In conclusion, Plaintiff was not similarly situated to either Mr. Simon or Mr. Coleman, because neither held the same position as Plaintiff. Moreover, Plaintiff and Mr. Coleman were treated the same because both received demotions and reductions in pay; however, Plaintiff was also offered and refused his same position at another location. In fact, the only similarly situated employees to Plaintiff were Albert Lopez and Luis Vela the other two Service Supervisors in Cementing Operations prior to the downturn, and they are both Hispanic. Finally, more

13

Hispanics received severance packages than Anglos and more Anglos received demotions than Hispanics.[3]   Therefore, Plaintiff cannot not establish that similarly situated non-Hispanic employees were treated more favorably.   Accordingly, Plaintiff cannot not establish his prima facie case and his claim of national origin discrimination fails as a matter of law.

**B.**      **Even if Plaintiff Establishes His Prima Facie Case, He Has No Evidence To Overcome BJ Services' Legitimate, Nondiscriminatory Reason For Demotion/Reclassification or His Termination.**

If this Court somehow finds that Plaintiff established his prima facie case, then Plaintiff's claim still fails because he has no evidence to overcome BJ Services' legitimate, nondiscriminatory reason for his demotion/reclassification and termination.

As stated previously, Plaintiff admits that there was a downturn in the oilfield industry in 1998.  *See* <u>Exhibit A</u> at 93:9-24.  BJ Services had to reorganize and reduce its workforce as a result.  *See* <u>Exhibit B</u> at ¶¶ 15, 17.  BJ Services' objective for the reduction in force was to retain its best and most versatile employees and layoff its mediocre and less versatile employees.  *See id.* at  ¶¶ 13-14.  The idea behind this objective is to retain the best employees so when the industry rebounds the best employees can be promoted back to its leadership positions.  *See id.* As a result, some employees were chosen for layoff and other employees were selected for reclassification or demotion; however, no employees were given a choice.  *See id.*

In Cementing Operations, Mr. Coleman was demoted from the Field Supervisor position to the Senior Service Supervisor position.  *See* <u>Exhibit C</u> at ¶ 7.  As a result, there was only a need for two of the three current Service Supervisors—Plaintiff, Mr. Lopez, and Mr. Vela.  *See id.* at ¶¶ 7-8, 15.  Mr. Patterson demoted Plaintiff because his working knowledge of the equipment was lower than Mr. Lopez' and Mr. Vela's working knowledge of the equipment.  *See*

---

[3] Plaintiff asserts that a layoff with severance pay is more favorable treatment than a demotion or reclassification. *See* <u>Exhibit E</u>.

*id.* at ¶¶ 8, 15.  With respect to Plaintiff's termination on December 30, 1998, Plaintiff admits that he refused to accept either the Senior Equipment Operator position at the Alice District or transfer to any position (Service Supervisor position) at the Camargo District.  *See* <u>Exhibit A</u> at 123:3 – 20; 139:10 – 141:23; 150:2-19.

Plaintiff has no evidence to support his claim that BJ Services' denial of severance pay, demotion/transfer instead of layoff, and termination were due to his Hispanic national origin. This is merely Plaintiff's subjective belief.  *See* <u>Exhibit A</u> at 109:2 – 8; 154:1 – 18; 193:2 – 25. However, it is well established that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.  *See, e.g., Bauer v. Albermarle Corp.,* 169 F.3d 962, 967 (5th Cir. 1999).  Moreover, BJ Services' decision to demote or transfer Plaintiff and not someone else does not establish it was discriminatory, even if it was unwise or unfair, which it was not.  *See Nash,* 9 F.3 at 404.  Therefore, Plaintiff has not established any evidence to overcome BJ Services' legitimate, nondiscriminatory reasons for its actions.

**C.      Plaintiff's Claim For Intentional Infliction of Emotional Distress Fails As A Matter Of Law.**

To support a claim for intentional infliction of emotional distress, the Texas Supreme Court has held that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Brewerton v. Dalrymple,* 997 S.W.2 212, 216 (Tex. 1999) (examining conduct in the employment context).  The Texas Supreme Court and Courts of Appeal have held even conduct which may be illegal in an employment setting may not constitute the sort of behavior that constitutes "extreme and outrageous" conduct.  *See e.g. City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex. 2000).  Further, whether an employer's alleged conduct may reasonably be regarded as so extreme and outrageous as to permit recovery

15

is a question of law for the court. *See O'Bryant*, 18 S.W.3d at 216-17. Only in the most unusual of employment cases does the conduct move out of the realm of an ordinary employment dispute and into the classification of extreme and outrageous. *See id.* This is due to the fact that "employers supervise, review, criticize, demote, transfer, discipline, and terminate employees. [This aspect of employment] is often stressful and unpleasant for an employee and at times may even be unwarranted. Nevertheless, 'an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results.'" *Id.* (citations omitted).

Plaintiff asserts that BJ Services, through its employees, acted intentionally or recklessly and inflicted emotional distress upon Plaintiff in the following ways: (1) Plaintiff was subjected to harassment and humiliation; (2) Plaintiff was subjected to a hostile work environment on account of, among other things, Defendant's conduct. *See Plaintiff's Original Petition* at ¶¶ 24-25. Plaintiff clarified his claims at his deposition by stating:

> Q.  What harassment were you subjected to?
> A.  Some of the other supervisors were constantly complaining about me.
> Q.  What did they complain about?
> A.  They complained that I did not work enough?
> Q.  And who were those supervisors that complained about you?
> A.  Mr. Vela and Mr. Lopez.
> ...
> Q.  Well, do you have any reason to believe that these two Hispanic supervisors would complain about you because you're Hispanic?
> A.  No.
> Q.  Is that you claim?
> A.  No, I'm just saying they complained about me.
> ...
> Q.  Did they tell jokes or stories about you because you were Hispanic?
> A.  No.
> Q.  Is there any other things that you claimed were harassment?
> A.  That was it basically.
> Q.  What about the humiliation?
> A.  That was it. They would do it in front of the district manager, operations supervisor.
> ...
> Q.  Was there any other supervisor or manager doing this to you?

16

A.    No. But nothing was ever done to put a stop to it or anything.

…

Q.    Did you ever complain?

A.    No.

…

Q.    Did it require you to go see a doctor or any psychiatrist or psychologist or counselor or anything?

A.    No.

Q.    Did it cause you to have to miss work or any other mental or physical symptoms?

A.    No.

<u>Exhibit A</u> at 171:9 – 174:22.

Plaintiff also generally asserts that the Company's conduct in not allowing him to take off in 1987, the day his son was born, constitutes intentional infliction of emotional distress. Importantly, BJ Services was not his employer at this time and the statute of limitations for intentional torts is two years. *See Muckelory v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825 (Tex. App. – Dallas 1994, no writ).

Even taking Plaintiff's allegations of BJ Services' conduct as true, which they are not, this conduct is not sufficient to support his claim for intentional infliction of emotional distress because none of these acts are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Brewerton*, 997 S.W.2 212 at 216. Accordingly, Plaintiff's claim of intentional infliction of emotional distress fails as a matter of law.

**D.    Plaintiff Did Not Qualify For Severance Pay.**

Plaintiff claims he was wrongfully denied severance benefits because he was selected to be reclassified to another position, instead of being laid off. In Plaintiff's Original Petition, he asserts that he was disciplined and terminated for refusing to accept a demotion and not offered or provided a severance package. *See Plaintiff' Original Petition* ¶¶ 18-21, 32. Plaintiff's answers to interrogatories further clarify his claim asserting that he is entitled to a severance

17

package for twelve weeks' separation pay according to BJ Services' Reduction in Force Plan.

*See Plaintiff's Answers to Interrogatories* at No. 6., attached as <u>Exhibit H</u>; <u>Exhibit G</u> at No. 3.

Finally, Plaintiff reiterate his claim at his deposition testifying that:

> Q:     And what part of your lawsuit is about is you're claiming that the Company violated the reduction-in-force policy, Deposition Exhibit 15. Is that right?
> A:     Correct.
> Q:     You are saying that by violating this policy, that the Company wrongfully denied you severance pay that you're entitled?
> A:     Correct.
> Q:     And that is twelve weeks of your pay.
> A:     Correct.

<u>Exhibit A</u> at 192:17- 193:1.

BJ Services' Reduction in Force Plan[4] allows for severance pay due to location closures,

consolidations and elimination of job functions as the result of lack of work due to decreases in

business activity. *See* Exhibit 2 attached to <u>Exhibit B</u>. The plan also states:

> . . . Separation pay <u>will not</u> be paid to employees who voluntarily resign, or are discharged for cause.   Employees will not be permitted to volunteer for Reduction-in-Force.   <u>Salaried (exempt) employees who are offered a transfer to a new location and decline will not be eligible for separation pay.</u> . . .

*Id.* (emphasis added).   BJ Services also had a one-time Enhanced Severance Policy for

individuals that met certain criteria. *See* Exhibit 7 attached to <u>Exhibit B</u> at ¶ 21.   It too required

termination by BJ Services and did not allow employees to volunteer for termination instead of

demotion or reclassification. *See id.* at ¶¶ 10, 14, 21.

---

[4] BJ Services' Reduction in Force Plan is an ongoing ERISA plan, which was not created for a specific event. *See* <u>Exhibit B</u> at ¶ 7.   BJ Services' plan or a version of it has been in existence since 1988 and has been amended at various times as the plan administrator determines it is necessary. *See id.*   In fact, this plan is currently applicable to over 3,000 employees nationwide. *See id.*   The administration of the plan requires coordination between each district and the plan administrator to evaluate all employees in affected districts, to determine which employees to retain or layoff, to calculate the amount of benefits each employee is entitled, and to manage the policy. *See id.* at ¶¶ 7-12.   Finally, the policy requires a continuing administration corresponding with the changing demands of the oilfield service industry. *See id.*   Accordingly, BJ Services' Reduction in Force policy is an ERISA plan. *See Perdue v. Burger King Corp.*, 7 F.3d 1251, 1253 n.5 (5th Cir. 1993) (recognizing that an ongoing plan require administration creates an ERISA employee benefit plan); *Whittmore v. Schlumberger Technology Corp.*, 976 F.2d 922, 923 (5th Cir. 1992) (same).

18

Despite Plaintiff's claim that he is entitled to severance payments—whether under the Reduction in Force Policy or the one-time Enhanced Severance Policy, Plaintiff overlooks the facts surrounding his termination. To start, Plaintiff admits he was a salaried employee. *See* Exhibit A at 87:13-19; 160:4-6. Plaintiff was offered another position in the Alice District and refused it. *See id.* at 123:2-20; 150:2-19. As a result of Plaintiff's reluctance to accept the position in the Alice District, he was offered a transfer to another location performing his current Service Supervisor position with no change in pay. *See* Exhibit F; Exhibit A at 139:10 – 141:23. However, he refused to relocate. *See* Exhibit A at 139:10 – 141:23. Consequently, Plaintiff was not eligible for severance pay under BJ Services' Reduction in Force Policy or its one-time Enhanced Severance Policy. *See* Exhibit B at ¶¶ 6, 10, 14, 22-23; *Noorily v. Thomas & Betts Corp.*, 188 F.3d 153 (3d Cir. 1999), *cert. denied*, __ U.S. __ (April 3, 2000) (recognizing that there was nothing wrong with a severance plan, which allowed employer to deny severance pay to employees who refused to relocate). Therefore, Plaintiff's claim for severance pay is barred as a matter of law.

### E. Alternatively, Plaintiff's Claim For National Origin Discrimination is Barred By Limitations.

To file a timely claim, a plaintiff must file and serve the defendant within the limitations period. *See Grant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). Pursuant to Section 21.254 of the Texas Labor Code, a plaintiff has sixty days to file his lawsuit from the date he receives the notice of his right to file a civil suit. *See* TEX. LAB. CODE ANN. § 21.245 (Vernon 1996). Thus, a plaintiff is required not only to file his claim within sixty days, but also effectuate service within the period. *See Roberts v. Padre Island Brewing Co., Inc.*, 28 S.W.3d 618, 620-21 (Tex. App.—Corpus Christi 2000, no pet. h.) (holding that compliance with sixty day limitations period requires service upon defendant within that period).

19

A plaintiff can effectively toll the limitations period if he files suit within the period and exercises due diligence in procuring the issuance and service of citation. *See id.* However, the duty to exercise due diligence starts from the date the suit is filed. *See Hodge v. Smith*, 856 S.W.2d 212, 215 (Tex. App.—Houston [1st Dist.], writ denied). Importantly, "[a]n unexplained delay constitutes a lack of due diligence as a matter of law." *Holt v. D'Hanis State Bank*, 993 S.W.2d 237, 241 (Tex. App.—San Antonio 1999, no pet.).

Here, Plaintiff received his Notice of Right to File a Civil Suit, which was dated November 29, 1999, on or about December 1, 1999. *See Notice of Right*, attached as <u>Exhibit I</u>. Thus, the sixty day limitations period expired on January 31, 2000. Although Plaintiff filed suit on January 25, 2000, and service was effectuated on February 18, 2000, the record does not reveal that he attempted service during the limitations period. *See Letter to Constable Abercia dated February 2, 2000* and *Service of Process*, both are attached as <u>Exhibit J</u>. Consequently, Plaintiff failed to use due diligence because service was not attempted until the limitations period had expired and no reason for this delay has been asserted. Accordingly, Plaintiff's claim of national origin discrimination fails as a matter of law.

## V. CONCLUSION AND PRAYER FOR RELIEF

Summary judgment for the Defendant, BJ Services Company, is mandated because Plaintiff claims are barred as a matter of law.

WHEREFORE, Defendant, BJ Services Company, requests that the Court set this motion for hearing and, upon such hearing, grant BJ Services Company's summary judgment on all of Plaintiff's claims, enter judgment for BJ Services Company with respect to all Plaintiff's claims, and award BJ Services Company its costs.

20

Respectfully submitted,

By: _____

WILLIAM JOHN BUX
State Bar No. 03546400
So. Dist. of Texas Bar No. 7396
3400 Chase Tower, 600 Travis
Houston, Texas 77002-3095
(713) 226-1275
(713) 223-3717 (Facsimile)

ATTORNEY IN CHARGE FOR
DEFENDANT BJ SERVICES COMPANY.

OF COUNSEL:

LOCKE LIDDELL & SAPP LLP
David Gregory
State Bar No. 24007274
So. Dist. of Texas Bar No. 24397
3200 Chase Tower
Houston, Texas 77002
Telephone: (713) 226-1200
Telecopier: (713) 223-3717

## CERTIFICATE OF SERVICE

I hereby certify that a copy BJ Services Company's Motion for Summary Judgment was served on this _14th_ day of December, 2000 by United States Mail, Certified Mail, Return Receipt Requested upon the following:

Charles C. Smith
317 Peoples St.
Nueces Bldg., Suite 1011
Corpus Christi, Texas 78401

_____
David M. Gregory

21

**DEPOSITION OF GERARDO ORTA**

1               CHANGES AND SIGNATURE

2

3      PAGE LINE      CHANGE                    REASON

4      _____

5      _____

6      _____

7      _____

8      _____

9      _____

10     _____

11     _____

12     I, GERARDO ORTA, have read the foregoing deposition and
       hereby affix my signature that same is true and correct,

13     except as noted above.

14     _____
                       GERARDO ORTA

15

16     THE STATE OF TEXAS *
       COUNTY OF _____ *

17             Before me _____, on this day

18     personally appeared GERARDO ORTA, known to me (or proved
       to me under oath or through _Texas Driver's License_____)

19     (description of identity card or other document) to be the
       person whose name is subscribed to the foregoing

20     instrument and acknowledged to me that they executed the
       same for the purposes and consideration therein expressed.

21             Given under my hand and seal of office this
       16th day of _____ 2000.

22

23

24     _____
       Notary Public in and for The State of Texas
       My Commission Expires: _9-16-2003_____

25

---

**UNITED-WOMACK REPORTING - A LEGALINK COMPANY (713) 426-0400**

## CORRECTIONS TO DEPOSITION OF GERARDO ORTA

| Page # | Line # | Changes | Reason |
|--------|--------|---------|--------|
| 81 | 24 | No. | Clarify |
| 82 | 15 | No. I had told Mr. Patterson that I did not want to relocate. He asked if I would be willing to relocate in the future that was what I answered yes to. | Clarify |
| 83 | 24 | No. I was only willing to relocate in the future when my children were older, I did not want to relocate while my children were still young. | Clarify |
| 84 | 2 | No. I had originally left the relocation questions unanswered and there were some other things that I did not like and some other things that were in there. | Clarify |
| 107 | 15 | There is no difference between a Service Supervisor and a Senior Service Supervisor except for the pay rate. | Clarify |
| 108 | 14 | I did not want to leave my job I was terminated due to a workforce reduction. | Inaccurate |
| 113 | 12 | I was told I was terminated as a Service Supervisor due to a reduction in workforce. | Inaccurate |
| 114 | 25 | No. My function was to be Relief Supervisor primarily and help run equipment when needed. | Inaccurate |
| 115 | 19 | no, That was an option to me after they had terminated me as a service supervisor. | Inaccurate |
| 115 | 24 | No. I had already been terminated as a Service Supervisor because of a workforce reduction. | Inaccurate |
| 116 | 19 | No. I had already been terminated as a Service Supervisor because of a workforce reduction. | Inaccurate |

| 118 | 9  | No.  I had already been terminated as a Service Supervisor due to a workforce reduction. | Inaccurate |
|-----|----|-----|-----|
| 118 | 12 | Yes, Mr. Maguire discussed a pay rate, but I had already been terminated as a Service Supervisor. | Inaccurate |
| 121 | 23 | No.  Every indication from that conversation to me insinuated a severance package. | Clarify |
| 121 | 25 | No.  Every indication from that conversation to me insinuated a severance package. | Clarify |
| 125 | 1  | No.  I had not done any work for BJ Service Company since I was terminated on Friday December the 18, 1998. | Inaccurate |
| 133 | 23 | No.  We were looking into a severance package at that time because I had already been terminated due to a workforce reduction. | Inaccurate |
| 145 | 10 | No. | Clarify |
| 145 | 13 | No.  John Patterson gave me Saturday the 19th and the 20th of December off, but I had already been terminated as a Service Supervisor. | Inaccurate |
| 146 | 14 | No. | Inaccurate |
| 148 | 15 | No, I was not told anything like that. | Inaccurate |
| 152 | 8  | I had been terminated by BJ Services on December 18, 1998. | Clarify |
| 152 | 13 | No.  I had been terminated on December 18, 1998. | Inaccurate |
| 152 | 20 | I was terminated from my Service Supervisor position on December 18, 1998. | Inaccurate |
| 154 | 15 | I told him I had not quit and he told me "turn in your things" | Inaccurate |

CVirPDF - www.fenito.com

| 181 | 20 | No.  I was not demoted was terminated on December 18, 1998 due to a workforce reduction. | Inaccurate |
| --- | --- | --- | --- |
| 181 | 23 | No.  I had been terminated on December 18, 1998. | Inaccurate |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GERARDO ORTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-103 |
| | § | |
| BJ SERVICES COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Came on Defendant BJ Services Company's Motion for Summary Judgment, and the Court having considered the motion, all responses thereto, and argument of counsel, finds that the motion has merit and should be granted. Accordingly, it is, therefore,

ORDERED that Defendant BJ Service Company's Motion for Summary Judgment is in all things GRANTED. It is further,

ORDERED that Judgment for BJ Services Company is entered on all claims. It is further,

ORDERED that Plaintiff shall pay BJ Services Company all of BJ Services Company's costs in this case.

SIGNED this _____ day of _____, 2000 in Corpus Christi, Texas.

_____
UNITED STATES DISTRICT JUDGE

22

EXHIBITS
NOT
IMAGED

ClibPDF - www.fastio.com