IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

**DEC 18 2000**

Michael N. Milby. Clerk

| | | |
|---|---|---|
| GERARDO ORTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-103 |
| | § | |
| BJ SERVICES COMPANY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT BJ SERVICES COMPANY'S MOTION TO STRIKE PLAINTIFF'S SUBSTANTIVE CHANGES TO HIS DEPOSITION OR, IN THE ALTERNATIVE, MOTION TO RE-DEPOSE PLAINTIFF AT PLAINTIFF'S EXPENSE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 30(e), Defendant BJ Services Company ("BJ Services") files this Motion to Strike Plaintiff's Substantive Changes to His Deposition or, in the alternative, Motion to Re-Depose Plaintiff at Plaintiff's Expense and respectfully shows the Court as follows:

### I.    Background

1.    Plaintiff is a former employee of BJ Services, who was demoted/reclassified due to a downturn in the oilfield industry in 1998. Plaintiff refused to accept available work and was ultimately terminated as a result. Plaintiff asserts that he was discriminated against based on his national origin, he was denied severance pay, and BJ Services' conduct resulted in intentional infliction of emotional distress upon him.

2.    BJ Services took Plaintiff's deposition on October 25, 2000. *See Plaintiff's Deposition*, attached as <u>Exhibit A</u>.

3.      On November 29, 2000, Plaintiff filed his signed signature page and changes to his deposition. *See Plaintiff's Errata and Signature Page*, attached as <u>Exhibit B</u>.

4.      In his changes to his deposition, Plaintiff makes twenty-seven changes and almost all of these changes are substantive. *See* <u>Exhibit B</u>.

5.      For instance, the following changes:[1]

**p. 81, ln. 24**

Q.      So you were willing to relocate domestically?

A.      Yes, sir? (No.)

**p. 82, ln. 14-15**

Q.      That's what you told your supervisor?

A.      Yes, sir. (No, I had told Mr. Patterson that I did not want to relocate. He asked if I would be willing to relocate in the future, that was what I answered yes to.)

**p. 83, ln. 22-24**

Q.      But you'd be willing to relocate elsewhere domestically?

A.      Correct. (No. I was only willing to relocate in the future when my children were older, I did not want to relocate while my children were still young.)

**p. 108, ln. 10-14**

Q.      Well, let's take a look at the situation back in December of '98. At the time, you were leading the company, right? Now, I understand you wanted to remain in your job. I believe that is what you are claiming, right?

A.      Correct. (I did not want to leave my job. I was terminated due to a workforce reduction.)

---

[1] The Plaintiff's charges are indicated by the parentheticals.

2

**p. 113, ln. 10-14**

> Q.    Did either Mr. Maguire or Mr. Patterson tell you what options or choices, if any, you had?
>
> A.    They - - after they had removed me from my job - - my job was a service supervisor.  They removed me from my job.  (I was told I was terminated due to a workforce reduction.)

**p. 115, ln. 18-24**

> Q.    They offered you the job?
>
> A.    Yeah, that was one of the options that I had.  Well it was not an option.  That was not even an option.  I was removed from my job and was told about this other job that they had (No, that was an option to me after they had terminated me as a service supervisor.)
>
> Q.    And you were given the opportunity to accept it?
>
> A.    Correct.  (No.  I had already been terminated as supervisor because of a workforce reduction.)

**p. 118, ln. 7-12**

> Q.    You didn't mention anything about your concern about pay?
>
> A.    No.  (No.  I had already been terminated as a service supervisor due to a reduction in workforce.)
>
> Q.    Did either Mr. Maguire or Mr. Patterson talk to you about the reduction in pay on December 18?
>
> A.    No.  (Yes.  Mr. Maguire discussed a rate of pay, but I had already been terminated as a service supervisor.)

**p. 121, ln. 22-25**

> Q.    He could have been talking about something else.
>
> A.    Sure.  (No.  Every indication from that conversation to me insinuated a severance package.)
>
> Q.    Like another job or change your pay or something.

3

A.   Correct.  (No.  Every indication from that conversation to me insinuated a severance package.)

**p. 133, ln. 20-23**

Q.   And by that meaning - - well you had already told him you weren't going to accept the equipment operator job.

A.   Correct.  (No.  We were looking into a severance package at that time because I had already been terminated due to a reduction in workforce.)

**p. 145, ln. 8-13**

Q.   And if you were going to stay at the Alice Yard, you're going to be an equipment operator?

A.   Correct.  (No.)

Q.   And your supervisor told you to take off that Friday to think things over.

A.   Correct.  (No.  John Patterson gave me Saturday, the 19th and the 20th of December off, but I had already been terminated as a service supervisor.)

**p. 148, ln. 11-15**

Q.   Didn't Mr. Patterson tell you, "well, we've offered you several jobs, you won't take them, you need to come in the next day, tomorrow, and turn in your credit cards and we're going to terminate your employment"?

A.   That's about it.  (No, I was not told anything like that.)

**p. 152, ln. 5-20**

Q.   If you had, what is your position?  If there had been a call, did you consider that you were an equipment operator at that point?

A.   I have no idea.  (I had been terminated by BJ Services on December 18, 1998.)

Q.   Well, what did you think you were?

A.   I have no idea.

4

Q.    Did you think you had any irresponsibility to report for work?

A.    I don't know.  (No.  I had been terminated on December 18, 1998.)

. . .

Q.    You filed - - you know you were terminated on the 30th of December, isn't that correct?

A.    Yes, sir.  (I was terminated from my service supervisor position on December 18, 1998.)

**p. 181, ln. 19-23**

Q.    And Mr. Coleman, because he got demoted?

A.    Correct.  (No.  I was not demoted – was terminated on December 18, 1998 due to a workforce reduction.)

Q.    Well, that's what was going to happen to you too, right?

A.    Correct.  (No.  I had been terminated on December 18, 1998.)

Exhibit A; Exhibit B.

## II.    Argument and Authorities

6.    In *Greenway v. International Paper Company*, Greenway made sixty-four material changes to her deposition.  144 F.R.D. 322, 323 (D. La. 1992).  A few examples that the court noted from Greenway's changes are:

As stated in deposition:

No, Sir.

Correction desired:

Yes, Sir.

As stated in deposition:

One way or another.  He gets his revenge.

5

Correction desired:

> One way or another.  He is very vindictive.

As stated in the deposition:

> Right outside the clarifier on the paved.

Correction desired:

> Right outside the clarifier on the dirt

As stated in the deposition:

> Well, it had to be over fifteen foot because

Correction desired:

> Well, it was approximately eight foot wide because . . . .

*Id.* at 323-25.

7.     The *Greenway* court recognized that the purpose of Federal Rule of Civil Procedure 30(e) is obvious:

> Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is Laurence Smith," then correction by the deponent would be in order.  *The Rule cannot be interpreted to allow one to alter what was said under oath*.  If that were the case, one could merely answer the questions with no thought at all, then return home and plan artful responses.  Depositions differ from interrogatories in that regard.  *A deposition is not a take home examination.*

*Greenway*, 144 F.R.D. at 325 (emphasis added).

8.     In *Innovative Marketing v. Norm Thompson Outfitters*, the court was presented with a similar but less egregious attempt to change a deposition.  171 F.R.D. 203 (W.D. Tex 1997).  In *Innovative Marketing*, the defendants asked the court to strike the errata sheets of two witnesses, but referred the court to the errata sheet for only one witness.  *Id.* at 205 n.1.  Further, the one errata sheet only had five corrections in total and one appeared to be a typographical

6

error. *See id.* The court decided that based on the language of Rule 30(e) and *a review of the five changes*, the better remedy is to allow the changes. *See id.* In doing so, the court recognized that a safeguard against such changes "allows for the party taking the deposition to reopen the examination if the changes to a deposition render the deposition useless or incomplete without additional testimony." *Id.* at 205; *See Lugtig v. Thomas*, 89 F.R.D. 639, 642 (D. Ill. 1981).

9.     In *Lugtig v. Thomas*, the court also found that changes to a deposition allows the examining party a right to reopen the deposition if changes made pursuant to Rule 30(e) make the deposition incomplete or useless. 89 F.R.D. at 642. The court recognized that because "it is the [Plaintiff's] actions which necessitate reopening the examination of [Plaintiff], the costs and attorneys fees connected with the continued deposition will be borne by [Plaintiff]." *Id.*

10.     Here, Plaintiff made twenty-seven changes. *See* <u>Exhibit B</u>. The majority of these changes is substantive. For some reason, Plaintiff changes his story for the first time after his deposition was taken. *See id.* Specifically, Plaintiff now asserts that he was terminated, not demoted, on December 18, 1998, and then offered a demotion with a reduction in pay. *See* <u>Exhibit B</u>. However, this story not only conflicts with the Plaintiff's deposition testimony from October 25, 2000, but it also conflicts with his Affidavit to the Equal Employment Opportunity Commission, his Employment Intake Questionnaire, Plaintiff's letter to BJ Services Company dated January 29, 1999, and Plaintiff's Original Petition. *See Employment Intake Questionnaire* attached as <u>Exhibit C</u> ("I was terminated . . . because I would not take a demotion and a cut in my pay."); *Affidavit of Plaintiff*, attached as <u>Exhibit D</u> ("On or about December 18, 1998 . . . John Patterson told me that because of a downturn in business I would have to take a demotion and a cut in my pay."); *Plaintiff's Letter to BJ Services Company dated January 29, 1999,*

7

attached as Exhibit E ("I was terminated on December 30, 1998. I was called in on December 18…. [and told] that I was going to be demoted."); *Plaintiff's Original Petition* at ¶¶ 13-21.

11.   Plaintiff's changes to his deposition are signed under oath. *See* Exhibit B. However, his new position is contrary to his prior statements. Accordingly, the Court should strike Plaintiff's changes to his deposition. *See Greenway*, 144 F.R.D. at 325.

12.   In the alternative and pursuant to *Lugtig* and *Innovative Marketing*, BJ Services requests the Court to allow it to re-depose Plaintiff at his expense. *Innovative Marketing*, 171 F.R.D. at 205; *Lugtig*, 89 F.R.D. at 642. BJ Services calculates its cost to re-depose Plaintiff at $2,700.00. *See Affidavit of David M. Gregory*, attached as Exhibit F. This includes airfare; rental car; attorney preparation, travel and deposition time; court reporter; and time to prepare and file this motion. *See id.*

**Prayer**

WHEREFORE, BJ Services requests the Court to strike Plaintiff's changes to his deposition or, in the alternative, allow it to re-depose Plaintiff at Plaintiff's expense $2,700.00, and for such other relief as justice requires.

Respectfully submitted,

By: *William John Bux*
WILLIAM JOHN BUX
State Bar No. 03546400
So. Dist. of Texas Bar No. 7396
3400 Chase Tower, 600 Travis
Houston, Texas 77002-3095
713) 226-1275
(713) 223-3717 (Facsimile)

ATTORNEY IN CHARGE FOR
DEFENDANT BJ SERVICES COMPANY.

8

OF COUNSEL:

LOCKE LIDDELL & SAPP LLP
David Gregory
State Bar No. 24007274
So. Dist. of Texas Bar No. 24397
3200 Chase Tower
Houston, Texas 77002
Telephone: (713) 226-1200
Telecopier: (713) 223-3717

## CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that he contacted counsel for Plaintiff, Charles Smith, on December 15, 2000 regarding the subject matter of this Motion.  Mr. Smith stated he is opposed to this Motion.

David M. Gregory

## CERTIFICATE OF SERVICE

I do hereby certify that on the ___/5___ day of December, 2000, a true and correct copy of BJ Services Company's Motion to Strike Plaintiff's Substantive Changes to His Deposition or, in the Alternative, Motion to Re-Depose Plaintiff at Plaintiff's Expense has been served on the following counsel of record by Certified Mail, Return Receipt Requested and addressed as follows:

    Mr. Charles C. Smith
    317 Peoples St.
    Nueces Bldg., Suite 1011
    Corpus Christi, Texas 78401

David M. Gregory

9

# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

GERARDO ORTA,                          *
                                   *
    PLAINTIFF,         *
                                   *
VS.                                    *   CIVIL ACTION NO. C-00-103
                                   *
BJ SERVICES COMPANY,                   *
                                   *
    DEFENDANT.         *

**************************************************

ORAL DEPOSITION OF

GERARDO ORTA

OCTOBER 25, 2000

**************************************************

ORAL DEPOSITION of GERARDO ORTA, produced as a
witness at the instance of the Defendant, and duly sworn,
was taken in the above-styled and numbered cause on the
25th of October, 2000, from 9:53 a.m. to 3:06 p.m., before
Sharon Tinnell, CSR in and for the State of Texas,
reported by machine shorthand method, at the offices of
Charles C. Smith, 317 Peoples Street, Nueces Building,
Suite 1011, Corpus Christi, Texas, pursuant to the Federal
Rules of Civil Procedure and the provisions stated on the
record or attached hereto.

LEGALINK

United-Womack Reporting  Tel 713-426-0400
worldwide court reporting • legal videography • litigation support services
1235 North Loop West, Suite 510  Houston  TX 77008-4704
Tel 713-426-0400  Fax 713-426-0600  1-888-513-9800

## DEPOSITION OF GERARDO ORTA

Page 81

1    supervisor?

2         A.   Yes, sir.

3         Q.   And then get promoted up to operations

4    supervisor.

5         A.   Yes, sir.

6         Q.   And finally to district manager.

7         A.   Correct.

8         Q.   Did you discuss your career goals with

9    Mr. Patterson at the time you had this evaluation in

10   January 1998?

11        A.   Yes, sir.

12        Q.   And did he agree with you that that would be the

13   appropriate career path to pursue?

14        A.   Yes, sir.

15        Q.   Down below where we've just been talking career

16   goals, there's another one, willing to relocate.  See

17   that?

18        A.   Yes, sir.

19        Q.   And for domestic, you marked yes.

20        A.   Uh-huh.

21        Q.   Is that right?

22        A.   Yes, sir.

23        Q.   So you were willing to relocate domestically.

24        A.   Yes, sir.

25        Q.   Did you understand that that meant that you might

1    be reassigned to another office other than Alice, Texas?

2        A.    Yes, sir.

3        Q.    And did you understand that it might be another

4    office in Texas?

5        A.    Yes, sir.

6        Q.    And did you understand it could be a relocation

7    to another state?

8        A.    Yes, sir.

9        Q.    Like California or --

10       A.    Yes, sir.

11       Q.    -- somewhere else?  And you were willing to

12   relocate?

13       A.    Yes, sir.

14       Q.    That's what you told your supervisor.

15       A.    Yes, sir.

16       Q.    Now, for the international, it's not marked yes

17   or no.  You've got a question mark, and above it, it says

18   "in future."

19       A.    Uh-huh.

20       Q.    That's what it says.

21       A.    No.

22       Q.    Could you interpret that -- what that question

23   mark and the "in future" that's written above --

24       A.    Domestic, relocate, yes, in the future;

25   international, it's undecided.

DEPOSITION OF GERARDO ORTA

1    Q.    You weren't sure.

2    A.    Correct.

3    Q.    Now, by international, that could mean being sent

4    to another country.

5    A.    Correct.

6    Q.    You're aware that BJ Services Company has

7    operations worldwide.

8    A.    Yes, sir.

9    Q.    Like up in the North Sea?

10   A.    Yes, sir.

11   Q.    And over in -- they work out of Singapore --

12   A.    Sure.

13   Q.    -- or places in Southeast Asia?

14   A.    Yes, sir.

15   Q.    So you were aware, just because of your years of

16   experience, that BJ Services Company had field offices all

17   over the world wherever there's oil fields.

18   A.    Yes, sir.

19   Q.    And you weren't sure if you wanted to relocate to

20   them or not.

21   A.    Correct.

22   Q.    But you would be willing to relocate elsewhere

23   domestically.

24   A.    Correct.

25   Q.    Did you have any objection to the evaluation that

## DEPOSITION OF GERARDO ORTA

1     Q.   So he was from the BJ side of the business.

2     A.   Yes, sir.

3     Q.   So you had worked with him from 1995 till 1998.

4     A.   Correct.

5     Q.   Did you talk to Mr. Coleman about why you were

6  bumped out --

7     A.   No.

8     Q.   -- or replaced by him?

9     A.   No.

10    Q.   Well, let's take a look at the situation back in

11  December of '98.  At the time, you were leaving the

12  company, right?  Now, I understand you wanted to remain in

13  your job.  I believe that's what you're claiming, right?

14    A.   Correct.

15    Q.   But just for the sake of discussion here in this

16  deposition, if you couldn't stay on the cement side as a

17  service supervisor, where did you expect the company to

18  put you?

19    A.   I don't know.

20    Q.   Was there some other job that you expected them

21  to put you in?

22    A.   I don't know, sir.

23    Q.   So you're not making any claim for another

24  specific job that you were denied in December 1998.

25    A.   I'm not making any claim for a job I was denied,

**DEPOSITION OF GERARDO ORTA**

1    Q.   Of course, you knew him from before, as you said,

2    but --

3    A.   Yes.

4    Q.   -- this was the first day you had seen him in

5    Alice, Texas.

6    A.   Correct.  He may have been there the day before.

7    Q.   All right.

8    A.   He may have been there the day before, but I

9    had -- I worked all day before.

10   Q.   What was said in this meeting?

11   A.   Basically what it says right here, that

12   Mr. Coleman's position had been eliminated, he was moving

13   into my position, there was no room for four supervisors

14   in the Alice district, and I was being removed from my

15   position.

16   Q.   Well, are you complaining as part of your lawsuit

17   that Mr. Coleman was put into your position?  Are you

18   claiming that that was discriminatory based on your

19   national origin?

20   A.   Yes, sir.

21   Q.   Why is that?  Why was the fact that Mr. Coleman

22   was put into your job discriminatory, in your opinion?

23   A.   His position was the one that was eliminated, not

24   mine.  My position was still there.

25   Q.   So you believe Mr. Coleman should have been laid

1    off or terminated, not you.

2    A.   Yes.  Correct.  His position was eliminated.

3    Q.   Do you know why the company decided to demote

4    Mr. Coleman from his field supervisor job into your job?

5    A.   No, sir.

6    Q.   So after you learned that Mr. Coleman was coming

7    into your area and that you were losing your job, what, if

8    anything, did you say at that time?

9    A.   I can't remember.

10   Q.   Did either Mr. Maguire or Mr. Patterson tell you

11   what options or choices, if any, that you had?

12   A.   They -- after they had removed me from my job --

13   my job was as a service supervisor.  They removed me from

14   my job.

15   Q.   Meaning that was effective immediately.

16   A.   I no longer had a job as a service supervisor.

17   Q.   Okay, that's what you learned from this first

18   meeting.

19   A.   Correct.

20   Q.   On December 18th.

21   A.   Correct.

22   Q.   "I was no longer a service supervisor."

23   A.   I was no longer a service supervisor, correct.

24   That was my job.

25   Q.   What else did you learn in that meeting, if

## DEPOSITION OF GERARDO ORTA

1    anything?

2         A.    They said that I was being removed as a service

3    supervisor, and they had a position as a relief service

4    supervisor in cement and stimulation that I was going to

5    be moved to.

6         Q.    Would that have been a reduction in pay?

7         A.    Yes, sir.

8         Q.    How much reduction in pay?  Was there any

9    discussion of that?

10        A.    They told me how much I would get paid per hour.

11        Q.    It was going to become an hourly job.

12        A.    Correct.

13        Q.    What was going to happen was you were going to be

14   bumped back to an equipment operator position, right?

15        A.    Correct.

16        Q.    That's what they were called at the time.

17        A.    Uh-huh.

18        Q.    Is that right?

19        A.    Correct.

20        Q.    And you were going to be paid an hourly wage.

21        A.    Correct.

22        Q.    And then from time to time you'd be the relief

23   supervisor.  If an additional supervisor was needed, that

24   would be your assignment.

25        A.    Correct.

**DEPOSITION OF GERARDO ORTA**

1     Q.   But most of the time, you would be doing hourly

2   work as an equipment operator in the cementing area.

3     A.   No.

4     Q.   What would you be doing?

5     A.   Whatever.

6     Q.   Whatever jobs came in.

7     A.   Correct.

8     Q.   So you might have been doing some stimulation

9   fracturization --

10    A.   Correct.

11    Q.   -- work in addition to cementing.

12    A.   Correct.

13    Q.   So who told you on December 18th that you would

14  have that job?

15    A.   They did not tell me I would have that job.

16    Q.   What were you told?

17    A.   That was a job that was offered.

18    Q.   They offered you the job.

19    A.   Yeah, that was one of the options that I had.

20  Well, it was not an option.  That was not even an option.

21  I was removed from my job and was told about this other

22  job that they had.

23    Q.   And you were given the opportunity to accept it.

24    A.   Correct.

25    Q.   And what, if anything, did you say on December

1   18th about accepting that equipment operator's job?

2       A.   That I didn't know if I could take that job.

3       Q.   Why not?

4       A.   I had to think about it.  There were a lot of --

5   I had done it before, I had done the job before, and I

6   wasn't sure I wanted to do that.

7       Q.   Why?  Was it too hard to do, you didn't have the

8   skills to do it?

9       A.   No.

10      Q.   What was the reason?

11      A.   There's a variety of reasons why I didn't want

12  to -- I wasn't sure I wanted to go back to that.

13      Q.   Well, I'd like to know what those reasons were.

14      A.   The hours issue.  There was no guarantee on how

15  many hours I would receive.  There was a slowdown at

16  work.  That means the most I could probably get would be

17  40 hours guaranteed.  That was nowhere close to what I was

18  making before as a supervisor.

19      Q.   Any other reasons?

20      A.   Like I said, I had done the job before, and

21  basically I was not allowed to get hours.

22      Q.   I'm sorry, I don't understand.  Not allowed to

23  get hours, what do you mean?

24      A.   They had a variety of tasks that I could

25  accomplish, so basically I was moved around to wherever

**DEPOSITION OF GERARDO ORTA**

1    discussed it.

2         Q.    You just chose not to.

3         A.    It never came up.

4         Q.    Well, didn't you tell them that you couldn't take

5    the job because it didn't pay enough?

6         A.    No.

7         Q.    You didn't mention anything about your concern

8    about pay?

9         A.    No.

10        Q.    Did either Mr. Maguire or Mr. Patterson talk to

11   you about the reduction in pay on December 18th?

12        A.    No.

13        Q.    Didn't one or both of them tell you that they'd

14   see what they could do to get you additional pay as an

15   equipment operator above the normal rate for an equipment

16   operator --

17        A.    No, sir.

18        Q.    -- to help you out?

19        A.    No, sir.

20        Q.    That never was discussed.

21        A.    No, sir.

22        Q.    Are you aware of either Mr. Maguire or

23   Mr. Patterson going to the company and asking for

24   additional pay for you to help you to earn more than what

25   the normal equipment operator would earn?

## DEPOSITION OF GERARDO ORTA

Page 121

1    to do, he was in a position to help, to help me.

2        Q.   Did he tell you how he would help you?

3        A.   No.  I didn't -- I was in a state of shock.  I

4    didn't press the issue as to how.

5        Q.   Okay.  What did --

6        A.   To me, I thought maybe he was talking about a

7    severance package.

8        Q.   But he didn't talk about a severance --

9        A.   He never mentioned the word severance package,

10   no.  He never mentioned --

11       Q.   That was not --

12       A.   -- the words.

13       Q.   Excuse me, I'm sorry.  I didn't mean to interrupt

14   you.  Go ahead.

15       A.   That's it.

16       Q.   So I take it Mr. Maguire never mentioned a

17   severance package.

18       A.   Correct.

19       Q.   That was something you were just, in your mind,

20   thinking about.

21       A.   Correct.

22       Q.   He could have been talking about something else.

23       A.   Sure.

24       Q.   Like another job or change your pay or something.

25       A.   Correct.

1   Mr. Patterson quite a few times.

2       Q.   Okay.  But the first time you called him back --

3       A.   Was the 23rd, yeah.

4       Q.   The 23rd.  And that's -- and stated to him that

5   no one was going to be in until the 29th, meaning at the

6   human resource department?

7       A.   Correct, the person that was in charge.

8       Q.   You wanted to talk to the person in charge.

9       A.   Correct.

10      Q.   Do you know what his or her name was?

11      A.   No, sir, I sure didn't.

12      Q.   And then you said here -- and this is the part

13   that I don't understand -- "and we had not reached a

14   settlement on my position with the company."

15      A.   Mr. Patterson and I --

16      Q.   Okay, so you --

17      A.   -- had not agreed on anything.

18      Q.   There was no agreement.

19      A.   Correct.

20      Q.   And by that, meaning -- well, you had already

21   told him you weren't going to accept the equipment

22   operator job.

23      A.   Correct.

24      Q.   And you didn't know if there was some other job

25   available for you?  Is that one of the possibilities?

1    A.   Yes, I believe he did.

2    Q.   When did he tell you that?

3    A.   I can't remember the date.  I can't remember the

4  date.

5    Q.   Because you knew from December 18th you were no

6  longer a service supervisor.

7    A.   Correct.

8    Q.   And that if you were going to stay at the Alice

9  yard, you're going to be an equipment operator.

10    A.   Correct.

11    Q.   And your supervisor told you to take off that

12  Friday to think things over.

13    A.   Correct.

14    Q.   And on Monday, you came in and saw him and you

15  talked to him and he said, "Well" -- did he tell you to go

16  home?

17    A.   Yes, sir.  After I spoke with him, yes, sir.

18    Q.   And then --

19    A.   He sent me home.

20    Q.   He sent you home.  What about Tuesday?  Did you

21  report for work?

22    A.   No.

23    Q.   Why not?

24    A.   I didn't have a job.

25    Q.   Well, sure you did.  You hadn't been fired.

Case 2:00-cv-00103   Document 18   Filed in TXSD on 12/18/2000   Page 24 of 41

1    Q.   On the 29th, when you had your discussions with

2  Mr. Patterson, did he treat you in a business-like manner?

3    A.   Yes, sir.

4    Q.   Did he say or do anything to you that you believe

5  was derogatory or demeaning?

6    A.   No.

7    Q.   Well, after you talked to Mr. Patterson, what

8  were you to do, if anything, on the 29th?

9    A.   Turn in my equipment, turn in my stuff, my

10  uniforms.

11   Q.   Didn't Mr. Patterson tell you, "Well, we've

12  offered you several jobs, you won't take them, you need to

13  come in the next day, tomorrow, and turn in your credit

14  cards and we're going to terminate your employment"?

15   A.   That's about it.

16   Q.   That's what he told you on the 29th?

17   A.   I can't remember what day he said anything like

18  that or --

19   Q.   Well, the reason I'm asking is I want to make

20  sure we've got it right.  We have your letter.

21   A.   Uh-huh.

22   Q.   Because you say in your letter, on the top of the

23  second page, "Mr. Patterson told me to be in his office on

24  Wednesday, the 30th, and to bring my credit cards with

25  me."

Case 2:00-cv-00103   Document 18   Filed in TXSD on 12/18/2000   Page 25 of 41

1   Q.   Who?

2   A.   In 1997 it was Mr. David Villigram.

3   Q.   Mr. who?

4   A.   David Villigram.

5   Q.   Filligram?

6   A.   Villigram, V-I-L-L-I-G-R-A-M.

7   Q.   And who was it in '98?

8   A.   Luis Vela.

9   Q.   Luis Vela.  What is Mr. Vela's national origin?

10  A.   Hispanic.

11  Q.   What is Mr. Villigram's national origin?

12  A.   Hispanic.

13  Q.   So does that have something to do with Hispanic?

14  A.   I'm talking about the way I was treated.

15  Q.   But does it have anything to do with your

16  national origin?

17  A.   No.

18  Q.   Okay.

19  A.   Okay.

20  Q.   Anything else?

21  A.   No.

22  Q.   Is there anything else you believe was extreme or

23  outrageous that was done to you by the company?

24  A.   Not that I recall.

25  Q.   On paragraph 32 at the top of page seven, we're

**DEPOSITION OF GERARDO ORTA**

Page 181

1    dealing with your national origin discrimination claim

2    here, it says you were "qualified to perform the duties

3    for which he was hired, and performed his duties

4    satisfactorily.  Even so, Plaintiff was treated

5    differently than similarly situated white males on account

6    of his national origin, for, among other things, he was

7    disciplined and terminated for refusing to accept a

8    demotion and not offered or provided a severance

9    package."  See that?

10       A.   Yes, sir.

11       Q.   What similarly situated white males are you

12   referring to?

13       A.   Mr. Simon.

14       Q.   Anyone else?

15       A.   Mr. Coleman.

16       Q.   And is Mr. Simon because he got a package and you

17   didn't?

18       A.   Correct.

19       Q.   And Mr. Coleman because he got demoted.

20       A.   Correct.

21       Q.   Well, that's what was going to happen to you too,

22   right?

23       A.   Correct.

24       Q.   So the fact that Mr. Coleman was demoted, how is

25   that discriminatory?

## DEPOSITION OF GERARDO ORTA

Page 182

1      A.   He remained as a supervisor.  As far as I know,

2   he kept all his pay and everything, didn't lose anything.

3      Q.   You don't know whether he kept his pay; is that

4   right?

5      A.   That's right.

6      Q.   You do know he was demoted.

7      A.   Correct.

8      Q.   You will agree with me that Mr. Coleman as a

9   field supervisor, being reassigned, whether it's a senior

10  service supervisor or service supervisor, is a demotion.

11     A.   Correct.

12     Q.   That's the next -- would be the next level down.

13     A.   Correct.

14     Q.   And from a service supervisor, the next level

15  down is equipment operator, isn't it?

16     A.   Correct.

17     Q.   How were you disciplined for refusing to accept

18  the demotion?

19     A.   I was let go.

20     Q.   Well, you were terminated.

21     A.   Correct.

22     Q.   Do you see -- is there anything else other than

23  you being terminated that you're claiming is part of this

24  problem?

25     A.   No, not that I know of.

1 　　　　　　　　CHANGES AND SIGNATURE

2

3 　PAGE LINE 　　CHANGE 　　　　　　REASON

4 _____

5 _____

6 _____

7 _____

8 _____

9 _____

10 _____

11 _____

12 　I, GERARDO ORTA, have read the foregoing deposition and
hereby affix my signature that same is true and correct,

13 　except as noted above.

14 　　　　　　　　　　　GERARDO ORTA

15

16 　THE STATE OF TEXAS *
　COUNTY OF _____ *

17 　　　　Before me _____, on this day

18 　personally appeared GERARDO ORTA, known to me (or proved
to me under oath or through _Texas Driver's License_____ )

19 　(description of identity card or other document) to be the
person whose name is subscribed to the foregoing

20 　instrument and acknowledged to me that they executed the
same for the purposes and consideration therein expressed.

21 　　　　Given under my hand and seal of office this
_16th_ day of __November___ 2000.

22

23

24 　Notary Public in and for The State of Texas
My Commission Expires: _9-16-2003___

25

GRACIE CHANEY
NOTARY PUBLIC
State of Texas
Comm. Exp. 09-16-2003



**UNITED-WOMACK REPORTING - A LEGALINK COMPANY (713) 426-0400**

## CORRECTIONS TO DEPOSITION OF GERARDO ORTA

| Page # | Line # | Changes | Reason |
|--------|--------|---------|--------|
| 81 | 24 | No. | Clarify |
| 82 | 15 | No. I had told Mr. Patterson that I did not want to relocate. He asked if I would be willing to relocate in the future that was what I answered yes to. | Clarify |
| 83 | 24 | No. I was only willing to relocate in the future when my children were older, I did not want to relocate while my children were still young. | Clarify |
| 84 | 2 | No. I had originally left the relocation questions unanswered and there were some other things that I did not like and some other things that were in there. | Clarify |
| 107 | 15 | There is no difference between a Service Supervisor and a Senior Service Supervisor except for the pay rate. | Clarify |
| 108 | 14 | I did not want to leave my job I was terminated due to a workforce reduction. | Inaccurate |
| 113 | 12 | I was told I was terminated as a Service Supervisor due to a reduction in workforce. | Inaccurate |
| 114 | 25 | No. My function was to be Relief Supervisor primarily and help run equipment when needed. | Inaccurate |
| 115 | 19 | no, That was an option to me after they had terminated me as a service supervisor. | Inaccurate |
| 115 | 24 | No. I had already been terminated as a Service Supervisor because of a workforce reduction. | Inaccurate |
| 116 | 19 | No. I had already been terminated as a Service Supervisor because of a workforce reduction. | Inaccurate |

CVisPDF - www.fasiss.com

| 118 | 9 | No. I had already been terminated as a Service Supervisor due to a workforce reduction. | Inaccurate |
|---|---|---|---|
| 118 | 12 | Yes, Mr. Maguire discussed a pay rate, but I had already been terminated as a Service Supervisor. | Inaccurate |
| 121 | 23 | No. Every indication from that conversation to me insinuated a severance package. | Clarify |
| 121 | 25 | No. Every indication from that conversation to me insinuated a severance package. | Clarify |
| 125 | 1 | No. I had not done any work for BJ Service Company since I was terminated on Friday December the 18, 1998. | Inaccurate |
| 133 | 23 | No. We were looking into a severance package at that time because I had already been terminated due to a workforce reduction. | Inaccurate |
| 145 | 10 | No. | Clarify |
| 145 | 13 | No. John Patterson gave me Saturday the 19th and the 20th of December off, but I had already been terminated as a Service Supervisor. | Inaccurate |
| 146 | 14 | No. | Inaccurate |
| 148 | 15 | No, I was not told anything like that. | Inaccurate |
| 152 | 8 | I had been terminated by BJ Services on December 18, 1998. | Clarify |
| 152 | 13 | No. I had been terminated on December 18, 1998. | Inaccurate |
| 152 | 20 | I was terminated from my Service Supervisor position on December 18, 1998. | Inaccurate |
| 154 | 15 | I told him I had not quit and he told me "turn in your things" | Inaccurate |

| 181 | 20 | No.  I was not demoted was terminated on December 18, 1998 due to a workforce reduction. | Inaccurate |
|-----|----|------|------------|
| 181 | 23 | No.  I had been terminated on December 18, 1998. | Inaccurate |

# CITY OF CORPUS CHRISTI HUMAN RELATIONS COMMISSION
## 1201 LEOPARD STREET
## P. O. BOX 9277
## CORPUS CHRISTI, TEXAS 78469-9277

### EMPLOYMENT INTAKE QUESTIONNAIRE

Time Reported Into This Office _____     Intake Officer _____

**This form is affected by the Privacy Act of 1974, see Privacy Act Statement on reverse side before completing this form.**

Please answer the following questions, telling us briefly why you have been discriminated against in employment. An officer of CCHRC will talk with you after you complete this form.

Name _Gerardo Orta_ (Please Print)   Social Security # _451 - 13 - 5478_   Date of Birth _8,22,56_

Address _2922 Bexar Drive_   Telephone (area code) _____

City _Corpus Christi_   State _Texas_   Zip _78415_   County _Nueces_

Please provide the name of an individual at a different address in the local area who would know how to reach you.

Name _Olga Orta_   Relationship _wife_   Telephone _(512) 853-2957_

Address _2922 Bexar Drive_   City _Corpus Christi_   State _Texas_   Zip _78415_

I believe I was discriminated against by: (Check those that apply)

☒ EMPLOYER   ☐ UNION (Give Local No.)   ☐ EMPLOYMENT AGENCY   ☐ OTHER (Specify)_____

Name _B.J Service Company_   Name _____

Address _2700 Industrial St. Rd._   Address _____

City, State, Zip _Alice Texas 78333_   City, State, Zip _____

Company Telephone _(512) 387-6513_   Company Telephone _____

Approximate Number Of Employees _7200_   The Most Recent Date of Alleged Harm _12-30-98_

Your job title at this company _Service Supervisor_   Initial Hire Date _10-26-80_   Termination Date _12-30-98_

Immediate Supervisor's Name/Title _John Patterson   Operations Supervisor_

Are you now employed by the Employer whom you believe discriminated against you?   ☐ YES   ☒ NO

### NORMALLY, YOUR IDENTITY WILL BE DISCLOSED TO THE ORGANIZATION WHICH ALLEGEDLY DISCRIMINATED AGAINST YOU

Have you sought assistance about the action you think was discriminating from any government agency, from your union, an attorney, or from any other source?   ☐ NO   ☒ YES (If you answered "yes", complete section below.)

Name of Source of Assistance _Geanine Chustoine_   Date _1-11-99_

Results, If Any _None_

Have you filed a charge in the past?   ☒ NO   ☐ YES (If you answered "yes", complete section below.)

Approximate Date Filed _____   Organization Charged _____

Charge Number _____

### -OVER-

EXHIBIT
12
Orta

What action was taken against you wh   you believe to be discriminatory? What   , if any, was caused to you or to others in your work situation as a result of that action? (If more writing space is required, please use additional blank sheets.)

I was terminated after 18 years of Service, because I would not take a demotion and a cut in my monthly pay. There was another supervisor who was moved down and did not have to take a cut in pay. The other supervisor was anglo. The result of my not taking the demotion was that I was terminated. I did not receive any severence pay or compensation for my 18 years of loyalty to the company. The reason that I was asked to take a demotion was because the industry had slowed down and the company was not making as much revenue as was anticipated. There were other people that were layed off and received severence packages, but the majority off the people with over 5 years experience that received substential severence packages were anglo.

Why do you believe this action was taken against you?

The company was going to have to pay me a substential severence pack.

What remedy are you seeking? I would like to receive my full severence package and be classified as layed-off so that I may qualify for retraining.

SIGNATURE _____   DATE 1-13-99

**PRIVACY ACT STATEMENT**

(This form is covered by the Privacy Act of 1974; Public Law 93-579. Authority for requesting the personal data and the uses thereof are given below.)

1.   FORM NUMBER/TITLE/DATE. CCHRC Form 1. Intake Questionnaire. October 1995.

2.   AUTHORITY. Article IV. of Chapter 24. Code of Ordinance of the City of Corpus Christi.
     42 U. S. C. § 2000e-5(b), 29 U. S. C. §211, 29 U. S. C. §626.

3.   PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information to enable the Commission to avoid the intake of matters not within its jurisdiction.

4.   ROUTINE USES. Information provided on this form will be used by Commission employees to determine the evidence of facts relevant to a decision as to whether the Commission has jurisdiction over potential charges, complaints or allegations of employment discrimination. Information provided on this form may be disclosed to other state, local and federal agencies as may be appropriate or necessary to carrying out the Commissioner's functions. This would include employment practice laws. Information may also be disclosed to charging parties in consideration of. or. in connection with litigation.

5.   WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND THE EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION
     The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

# AFFIDAVIT

STATE OF **TEXAS**

CITY/COUNTY OF **Corpus Christi/Nueces**

CASE NAME **Orta vs B.J. Service**

CASE NUMBER **36b99088**

I, <u>Gerardo Orta</u> being first duly sworn upon my oath affirm and hereby say:
*(Name)*

I have been given assurances by an Agent of the U.S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding. Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with Agency policy.

I am <u>42</u> years of age, my gender is <u>Male</u> and my racial identity is <u>Other Race</u> .
*(sex)* *(race)*

I reside at <u>2922 Bexar Drive</u> ,
*(Number/Street)*

City of <u>Corpus Christi</u> , County of <u>Nueces</u> ,

State of <u>TX</u> , Zip Code <u>78415</u> .

My telephone number is *(including area code)* <u>(512) 853-2987</u> .

My statement concerns <u>B.J. Services Company</u> which is
*(Name of Union/Company/Agency)*

located at <u>2100 Industrial Site Road</u>
*(Number/Street)*

in <u>Alice</u> <u>TX</u> <u>78333</u>
*(City)* *(State)* *(Zip)*

My job classification is *(if applicable)* <u>Service Supervisor</u> .
*(job title)*

My immediate supervisor is *(if applicable)* <u>John Patterson, Operations Supervisor</u> .
*(Name)* *(job title)*

> **EXHIBIT**
> 13
> Orta

I had been employed by B.J. Service Company since October 26, 1980 and held the position of Service Supervisor. I was terminated on December 30, 1998.

On or about December 18, 1998, I was called into the Operations Supervisor's Office. The Area Manager, Bob McGuire and the Operations Supervisor, John Patterson told me that because of a downturn in business I would have to take a demotion and a cut in my pay. The person (White Male) who held the position above me was being demoted to my position but he was not going to take a cut in pay. Another Service Supervisor (White male) was laid off and he was given a severance package.

I told Mr. McGuire and Mr. Patterson that I did not feel that I should be demoted and as they had not given me any options, I told them I did not know what I was going to do. they hinted that I might be eligible for a severance package and called Human Resources to inquire about this. I talked to Mr. Patterson several days later and at that time he told me that I was not eligible for severance pay.

In late December, after the holidays, Mr. Patterson asked if I was going to come in to work. I told him that I was not going to take the demotion

<u>GO</u> Page 1 of 2
*(initials)*

STATE OF __TEXAS__  
CITY/COUNTY OF __Corpus Christi/Nueces__

CASE NAME __Orta vs B.J. Service__  
CASE NUMBER __36b99088__

### AFFIDAVIT (cont.)

and that because I did not know what position I was going to be working
in, I was going to wait and talk to Human Resources before I would report
to work.

I received a call from Mr. Patterson on Tuesday December 29,1998,asking
that I report to his office on Wednesday. When I reported to his office,
he asked me why I had not reported for work when scheduled and I told him
that we had discussed the matter and I had told him that I was going to
wait to  report to work until after I had talked to Human Resources. He
told me thatI had been called to come in to work on Sunday, December 27,
1998 and becauseI had not shown up, it had been assumed that I had quit.
because of this I was not eligible for a severance package. Other
employees (White males) who were discharged were given severance
packages.

I feel that I was treated differently and discriminated against because
I am Hispanic.

I have read and had an opportunity to correct this Affidavit consisting of __2__ handwritten ☐
typed ☑ pages and swear that these facts are true and correct to the best of my knowledge and belief.

_Gerardo Orta_

Subscribed and sworn to before me
this _19_ day of _January_ _1999_.

HENRY GORHAM  
Notary Public  
STATE OF TEXAS  
My Comm. Exp. Jan 29 2000

FEB 1 1999

Dear Sirs:

I am writing this letter in reference to my termination with BJ Service Company. I was terminated on December 30 1998. I was called in on December 18 by my operations supervisor John Patterson and the new District Manager Bob Maguire. I was advised that because our work had declined our Field Supervisor Rick Coleman had been moved down to a service supervisor position. There was no need for BJ Services in Alice to keep four supervisors and that I was going to be demoted .

I advised Mr. Patterson and Mr. Maguire that I was not sure if I wanted to be moved back down to operator because I had already done this once before. Mr. Maguire at this time stated that if If I did not feel I could go back to being an operator he was in a position to help me ( by this to me he was implying some type of severnce package).

I then left Mr. Maguires office in a state of shock after 18 years with the company I did not think I would be loosing my job when the other supervisors with the company had a lot less time or experience as a supervisor. I talked with Mr. Patterson who told me to take the weekend off to think it over and discuss it with my wife.

On Monday the 21 of December I talked with Mr. Patterson and advised him that I was not interested in taking a demotion. Mr Patterson at this time started playing word games asking me if I did not want a demotion what was it that I wanted after several minutes of going back and forth with Mr. Patterson asking what I wanted and my not knowing what He was talking about I finaly asked Mr. Patterson if I was eligeble for some type of severence package. Mr. Patterson then called Mr. Maguire on the telephone because Mr. Maguire was in California trying to move his family back to Alice. Mr. Patterson then gave me every indication that I was quilified for a severence package and that it was being prepared by human Resources.

Mr Patterson called me on the 23 of December and told me that I was not quilified for a severence package because my name had not been on the list. I then proceeded to call Human Resources and talked to a Melissa (I don't know her last name) who told me with the amount of time that I had with the company I quilified for a severnce package, but she was not in charge of that department and the person in charge of that department was already gone for the day and would not be back until tuesday the 29 of December. I then called Mr. patterson back and stated to him that  no one was going to be in until the 29 and we had not reached a settlement on my position with the company if he could not call me until tuesday when I had a chance to talk with human resources. Mr. Patterson told me that was alright with him. I called Mr. Patterson Tuesday afternoon . I had still not been able to get a hold of anybody in human resources.



EXHIBIT

10

Orta

BJ 0252

Mr. Patterson told me to be at his office on Wednesday the 30 of December and to bring my credit cards with me. On wednesday morning Mr. Patterson again asked me if I was going to take the demotion . I told him that I was not . He then told me that on sunday the 27 they had called me for a job and since I had not come to work I had quit my job. I told Mr. Patterson that I did not quit my job. He asked me to turn in my equipment and credit cards. I did as I was told and left with nothing after 18 years faithful service to the company.

I am writing this letter and hope that you will reevaulate my termination and realize that I was layed off from my position as a service supervisor and that I am quilified for a severence package.

Thank You
Gerardo Orta
1-29-99

BJ 0253

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GERARDO ORTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-103 |
| | § | |
| BJ SERVICES COMPANY, | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT OF DAVID M. GREGORY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned notary public, personally appeared David M. Gregory, who, after being duly sworn and identifying himself, upon his oath did state as follows:

My name is David M. Gregory. I am an associate with the law firm of Locke Liddell & Sapp LLP and one of the attorneys representing BJ Services Company in the above styled and captioned matter. I am over the age of 21 and have never been convicted of a felony. I am fully competent to make this affidavit. The facts stated herein are true and correct and are within my personal knowledge.

As a result of Plaintiff's substantive changes to his deposition, the cost to re-depose Plaintiff will be approximately $2,700. This includes attorney time for travel, preparation, and attendance at the deposition; airfare; car rental; court reporter fees; and preparation of BJ Services Company's Motion to Strike Plaintiff's Substantive Changes



to His Deposition or, in the alternative, Motion to Re-Depose Plaintiff at Plaintiff's Expense.

Further, Affiant sayeth not.



David M. Gregory

SUBSCRIBED AND SWORN TO before me by David M. Gregory on this _15th_ day of _December_, 2000.

Notary Public in and for
The State of T E X A S
My Commission Expires: _3-18-0 1_

SYLVIA ANN DIAZ
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 18, 2001

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

GERARDO ORTA, §
§
        Plaintiff, §
§
VS. § CIVIL ACTION NO. C-00-103
§
BJ SERVICES COMPANY, §
§
        Defendant. §

**ORDER**

CAME ON THIS DAY Defendant BJ Services Company's Motion to Strike Plaintiff's

Substantive Changes to His Deposition or, in the Alternative, Motion to Re-Depose Plaintiff at

Plaintiff's Expense, and the Court having considered the motion, all responses thereto, and

argument of counsel, finds that the motion has merit and should be GRANTED.  Accordingly, it

is, therefore,

ORDERED that Plaintiff's Substantive Changes to His Deposition are struck.

SIGNED this _____ day of _____, 2000 in Corpus Christi, Texas.

_____
UNITED STATES DISTRICT JUDGE
PRESIDING

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GERARDO ORTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-103 |
| | § | |
| BJ SERVICES COMPANY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

CAME ON THIS DAY Defendant BJ Services Company's Motion to Strike Plaintiff's

Substantive Changes to His Deposition or, in the Alternative, Motion to Re-Depose Plaintiff at

Plaintiff's Expense, and the Court having considered the motion, all responses thereto, and

argument of counsel, finds that the motion has merit and should be GRANTED.  Accordingly, it

is, therefore,

ORDERED that BJ Services Company is granted permission to re-depose Plaintiff at

Plaintiff's expense.  Accordingly, it is further,

ORDERED that Plaintiff shall pay Defendant BJ Services Company the amount of

$2,700.00 within ten (10) days of the signing of this Order.  Such payment should be mailed to

David M. Gregory, Locke Liddell & Sapp LLP, 600 Travis, 34th Floor, Houston, Texas  77002-

3095.

SIGNED this _____ day of _____, 2000 in Corpus Christi, Texas.

_____
UNITED STATES DISTRICT JUDGE
PRESIDING